UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR RAAMSES BENNETT, | No. C 09-0515 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| SAN FRANCISCO BAY AREA RAPID TRANSIT (BART), et al., | **Re: Defendants' Motion for Summary Judgment** |
| Defendants. / | |

Plaintiff Omar Raamses Bennett ("Bennett") brought this action against the San Francisco Bay Area Rapid Transit ("BART"), and against officers of the BART Police Department, alleging that he was falsely arrested and imprisoned in violation of various Constitutional provisions. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56(c). Having considered the parties' arguments and submissions, and for the reasons discussed below, the court enters the following memorandum and order.

BACKGROUND

The evidentiary record in this case leaves much to be desired. However, since the time of the initial hearing on this motion defendant has submitted a recording of the conversation between the arresting officer, Noel Flores ("Flores"), and BART dispatch. This recording is presented in CD-ROM format and is marked Exhibit 1. The submission of this with the moving papers would have been helpful in shedding light on the facts surrounding the moment of Bennett's arrest, and the basis on which that arrest was made. The following account represents the court's best understanding of

1 the events in light of the transmission and the affidavits submitted by the parties.  As appropriate on
2 a motion for summary judgment, the facts are taken in the light most favorable to the non-moving
3 party, Bennett.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

4 At approximately 11:30pm on January 22, 2008, Bennett was traveling on BART from San
5 Francisco to Hayward.  Docket No. 22-2 (Bennett Dec.) ¶ 1.  On arriving at Hayward, Bennett
6 attempted to exit the BART station; however, he found that the value remaining on his ticket was
7 insufficient.  *Id.*  Bennett then began to search for his wallet, but was unable to locate it.  *Id.* ¶ 2.
8 Bennett approached a BART station agent, and requested that the agent stop the train so that Bennett
9 could look for his wallet.  *Id.*[1]

10 Officers Flores and Keith Garcia ("Garcia"), both officers with the BART Police
11 Department, were on patrol at the Hayward station at the time.  Docket No. 19-1 (Flores Dec.) ¶ 2;
12 Docket No. 19-3 (Garcia Dec.) ¶ 3.  Flores overheard the conversation between Bennett and the
13 BART station agent, including a statement by Bennett that he did not have money to pay his fare and
14 did not have any identification.  Flores Dec. ¶ 2.  He approached Bennett and requested
15 identification.  Bennett Dec. ¶ 3.  Bennett stated that he was unable to provide identification,
16 because he had lost his wallet, but gave Flores his full name including his middle name, Omar
17 Raamses Bennett (the transmission repeats the middle name variously as Raames and Raamses).  *Id.*
18 and Ex.1.  Flores then detained Bennett for investigation for fare evasion.  Garcia Dec. ¶ 3.

19 Flores contacted BART dispatch to request a records and warrants check on Bennett.
20 *See* Ex.1; Flores Dec. ¶ 4; Bennett Dec. ¶ 3.  According to a BART lieutenant, this check was
21 conducted pursuant to BART policy.  Docket No. 19-2 (Lucarelli Dec.) ¶ 10; *see also* Flores Dec. ¶
22 4.  The precise contours of this BART policy are not specified in the record.  The record reveals that,
23 based on the information he obtained at the initial stop, Flores provided to BART dispatch the name
24 of Omar Raamses (or Raames) Bennett as the person he had detained and also provided his date of
25 birth.  Ex.1, Track 2; see also Bennett Dec. ¶ 3; Flores Dec. ¶ 4; Garcia Dec. ¶ 4.

26 The records and warrant check revealed an extraditable no-bail warrant issued out of
27 Pennsylvania in the name of Omar Alexander Bennett, but dispatch also advised of an aka name on
28

2

the warrant of Omar Raamses Bennett. Ex. 1, Tracks 3-4; Bennett Dec. ¶ 3; Flores Dec. ¶ 4. The remainder of the communication with dispatch and Pennsylvania provided the California driver's license number and some other identifying information. Most of the information obtained from plaintiff and Pennsylvania including name, race, date of birth, hair and eye color, weight and social security number matched. See Ex. 1, Tracks 2-5. Bennett also denied having ever been to Pennsylvania. Bennett Dec. ¶ 4.

It is not clear at what point in the transmittal of information Flores arrested Bennett or whether Bennett was actually merely detained before his arrest. However, based upon the information Flores had regarding the no-bail warrant he states in his declaration that he placed Bennett under arrest at the time he received the information and handcuffed him. *Id.*; Flores Dec. ¶ 5. However, Flores continued to transmit and receive information as is demonstrated by Exhibit 1. Flores proceeded to search Bennett incident to the arrest, and found Bennett's wallet in his left back pocket. Bennett Dec. ¶ 5. Bennett's wallet contained his California driver's license. *Id.* This license showed Bennett's date of birth and that he was six feet tall and weighed 180 pounds. *Id.*; Flores Dec. ¶ 11. The warrant information gave the same date of birth and indicated Bennett was 5'10" tall and 180 pounds.

Flores then transported Bennett to the Hayward BART police facility. Flores Dec. ¶ 6. During this time, Bennett repeatedly claimed that he had never been to Pennsylvania and that he was not the subject of the Pennsylvania warrant. Bennett Dec. ¶ 6. From the Hayward BART facility, Flores contacted BART dispatch to verify the warrant. Flores Dec. ¶ 6. He ascertained that the Pennsylvania warrant was issued for an individual named "Omar Alexander Bennett aka Omar Raamses Bennett." *Id.* He also confirmed that Bennett's date of birth and social security number matched the date of birth and social security number associated with the Pennsylvania warrant. *Id.* ¶¶ 6–7; *see also* Garcia Dec. ¶ 8.[2] However, according to Bennett, Flores had provided dispatch with an incorrect social security number. Bennett Dec. ¶ 7. Flores claims that he provided dispatch with the correct social security number, and only mistakenly recorded the wrong number in the BART police report. Flores Dec. ¶ 10. The transmission contained in Exhibit 1 shows that the

3

1  numbers, in fact, matched, thus bearing out Flores' statement.  And, there is no dispute that
2  Bennett's date of birth matched the date of birth on the warrant.  *Compare* Docket No. 23 (Plaintiff's
3  Exhibits), Exhs. E (Petition) & F (Inquiry), *with id.*, Exh. D (Administrative Message); *see also* Ex.
4  1..  The physical description associated with the Pennsylvania warrant described a black male, with
5  height five feet ten inches and weight 180 pounds; Bennett, according to his driver's license, is a
6  black male with height six feet and weight 180 pounds.  Flores Dec. ¶ 11.  Flores subsequently asked
7  BART dispatch whether a photograph was included with the Pennsylvania warrant, to compare with
8  Bennett, but was told that no photograph was available.  *Id.* ¶ 8.  All of the facts contained in this
9  paragraph are consistent with the transmissions contained in the subsequently filed Exhibit 1.
10         Flores transported Bennett to the Alameda County jail at Santa Rita.  Bennett Dec. ¶ 8;
11 Flores Dec. ¶ 12.  Bennett was searched, booked and fingerprinted, and then held for three days prior
12 to being released.  Bennett Dec. ¶ 9.  It is not clear how BART became aware that they had, in fact,
13 arrested the wrong man.
14         The BART Police Department has never received notice that either Flores or Garcia have
15 ever violated any citizen's constitutional rights prior to this incident.  Lucarelli Dec. ¶¶ 5–6.
16 Furthermore, no citizen's complaint was received regarding these officers with respect to this
17 incident.  *Id*. ¶ 8.  According to Lucarelli, both Flores and Garcia acted according to BART policy
18 and training.  *Id*. ¶ 10.
19
20 LEGAL STANDARD
21         Summary judgment is proper when the pleadings, discovery and affidavits show that there is
22 "no genuine issue as to any material fact and that the moving party is entitled to judgment as a
23 matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the
24 proceedings.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for
25 summary judgment bears the burden of identifying those portions of the pleadings, discovery and
26 affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*,
27 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at
28

4

1  trial, the moving party need only point out "that there is an absence of evidence to support the
2  nonmoving party's case." *Id.* at 325.

3  Once the moving party meets its initial burden, the nonmoving party must go beyond the
4  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
5  genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving
6  party's allegations. *Id.*; *see also Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 959–60
7  (9th Cir. 1994). The court may not make credibility determinations and inferences drawn from the
8  facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477
9  U.S. at 255; *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

DISCUSSION

As a threshold matter, the court notes that no competent evidence was submitted by plaintiff in opposition to defendants' motion for summary judgment. Specifically, neither of the two declarations submitted along with plaintiff's opposition, which contain the entirety of the evidence submitted, were made under oath. Consequently, neither declaration is subject to the penalty of perjury, and, therefore, they are inadmissible. Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). The absence of any competent evidence to rebut defendants' evidence dooms plaintiff's opposition, and defendants' motion could be granted for this reason alone. The subsequently submitted Exhibit 1 supports defendants' version of events. The court, nonetheless, takes up the claim of false arrest, references plaintiff's declaration and disposes of the claim on the merits. The rest of the claims fall in place as explained below.

Plaintiff alleges that his arrest based on mistaken identification violates Constitutional guarantees. Defendants make three arguments in support of their motion. Firstly, that Flores and Garcia's mistaken identification was not unreasonable. Secondly, that the officers are entitled to

5

1  qualified immunity.  Finally, that BART is not subject to liability under 42 U.S.C. section 1983
2  because it did not have a policy or custom that led to Constitutional violations.

3  I.      False arrest

4       A claim of false arrest is cognizable under Section 1983 as a Fourth Amendment violation.
5  *See Pierson v. Ray*, 386 U.S. 547, 557 (1967); *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir.
6  1995).[3]  When the police have probable cause to arrest one party, and mistakenly arrest another in
7  his place, the mistaken arrest will not violate the Fourth Amendment so long as the officers in
8  question acted reasonably and in good faith.  *Hill v. California*, 401 U.S. 797, 802 (1971).  The
9  Fourth Amendment's "reasonableness" standard in mistaken identity cases is thus focused on the
10 reasonableness of the mistake in identity.

11      In *Hill*, police officers had probable cause to arrest Hill.  *Id.* at 798–99.  Arriving at Hill's
12 address, they were met by a man inside Hill's apartment, matching Hill's physical description,
13 whom they promptly arrested.  *Id.*  The arrestee, a third party named Miller, stated that he was not
14 Hill, and produced identification confirming that he was in fact Miller.  *Id.*  The Court held that
15 Miller's self-identification was not sufficient reason to conclude that the police's mistake was
16 unreasonable, finding that "aliases and false identifications are not uncommon."  *Id.* at 803–04.  The
17 Court noted several other circumstances that gave the police reason to suspect Miller, including that
18 "there was a lock on the door and Miller's explanation for his mode of entry was not convincing,"
19 and that "[h]e denied knowledge of firearms in the apartment although a pistol and loaded
20 ammunition clip were in plain view in the room."  *Id.*

21      In *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), police officers followed a tip,
22 encountered a man fitting their suspect's description, and requested identification.  *Id.* at 662.  The
23 man's identification identified him as Ronald A. Tibbs, with a birth date of Oct. 14, 1955.  *Id.*  The
24 officers discovered an unexecuted traffic warrant for Ronald L. Tibbs, described by the warrant as
25 an African-American male with a birth date of January 9, 1949.  *Id.*  The officers questioned their
26 suspect about the warrant; he responded that he believed it had been taken care of, apparently
27 confusing this warrant with a different traffic violation which he had actually committed.  *Id.* at
28

6

662–63. Based on his apparent knowledge of the warrant and the matching physical features, the officers arrested Ronald A. Tibbs. *Id.* The Seventh Circuit held that this mistake was not unreasonable, even though the warrant had a different middle initial and birth date than the arrestee's. *Id.* at 665. Likewise, in *Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002), officers pulled over a car and found illegal drugs in the driver's purse. *Id.* at 1343. Officers then requested identification from the car's passenger, who provided identification stating his name to be Joe John Rodriguez. *Id.* at 1343–44. The officers were informed by dispatch of a "name hit" for a Victor Heredia with the alias Joe Rodriguez. *Id.* at 1344. Dispatch also relayed other identifying information associated with the warrant to the officers, who then arrested Joe Rodriguez. The Eleventh Circuit found that the identifying information for the plaintiff and Heredia was identical with respect to name, sex, age, and race, with one material difference—the warrant listed a height of 5'6", whereas the arrestee was 5'11". *Id.* at 1347. Considering the totality of the circumstances, the court found that the officers' mistake was reasonable. *Id.* at 1349. Other courts have found arrests reasonable so long as there is a name and address match, even if the warrant is for "a black female, five foot seven and weighing 172 pounds, born February 5, 1951" and the arrestee was in fact a white female, five foot five, and born May 2, 1951. *Johnson v. Miller*, 680 F.2d 39 (7th Cir. 1982).

In this Circuit, in *Watts v. County of Sacramento*, 256 F.3d 886 (9th Cir. 2001), an anonymous tip alerted authorities that a murder suspect named Chris Burgess had been seen. *Id.* at 888. The officers were informed that Burgess was a black male, six feet one inch tall, and weighing 200 pounds. *Id.* It was disputed whether they were also informed that he was tattooed. *Id.* Arriving at the address indicated by the tipster, the officers were met by a man generally fitting Burgess' description, wearing only boxer shorts and with no visible tattoos. *Id.* The officers inquired whether his name was Chris; when he responded affirmatively, they immediately arrested him. *Id.* However, the man they arrested was in fact a third party named Christopher Pryor. *Id.* The Ninth Circuit held that summary judgment was inappropriate on the false arrest claim because the record did not make clear as a matter of law that it was reasonable for the officers to believe that Pryor was Burgess. *Id.* Likewise, in *Simons v. County of Marin*, 682 F. Supp. 1463 (N.D. Cal. 1987) (Patel, J.), this court

7

denied summary judgment on the grounds that a mistaken arrest based solely on a matching name could be unreasonable. *Id.* at 1472. The warrant there described the suspect as a white male, 29 years old, five feet ten inches tall, weighing 170 pounds, with thinning brown hair. *Id.* at 1467. Based on this warrant, officers arrested Fred Martin Simons, a white male who was 42 years old, five feet nine inches tall, weighed 186 pounds and had graying brown hair. *Id.* at 1467–68. The officers were aware before the arrest that the middle names on the warrant and of the arrestee did not match, and that a valid record existed for a Fred Martin Simons, born in 1943 and living at the arrestee's address. *Id.* at 1467. This court found that a triable issue of fact existed as to the reasonableness of the mistake in identity, and concluded that summary judgment was not appropriate. *Id.* at 1472.

Defendants' reliance on *Herring v. United States*, ___ U.S. ___, ___, 129 S. Ct. 695 (2009), is misplaced. In that case, the police arrested a man based on a warrant which, unbeknownst to the arresting officers, had been recalled. *Id.* at 698. The government conceded that this mistaken arrest was a violation of the Fourth Amendment; the only issue presented by *Herring* was whether that Fourth Amendment violation justified excluding evidence discovered in a subsequent search. *Id.* at 699. The Court in *Herring* discussed only the exclusionary rule, and therefore did not consider the key question in the case at bar: whether the original arrest violated the Fourth Amendment because it was based on an unreasonable mistake. It is therefore inapposite. Defendants are likewise incorrect in their analogy between this case and *Baker v. McCollan*, 443 U.S. 137 (1979). There, the arrestee did not claim that the arrest itself was wrongful, even though it was based on a mistake of identity; instead, the claim rested on the officer's failure to investigate his identity following the arrest. *Baker*, 443 U.S. at 142. Here, Bennett claims that his original arrest violated the Fourth Amendment, not that the officers bore a constitutional duty to further investigate his identity after an arrest based on probable cause.

The officers arrested Bennett because of their mistaken belief that he was Omar Alexander Bennett, the subject of an extraditable warrant. Flores Dec. ¶¶ 4–7, 9–12; Garcia Dec. 4–5, 7–10.

8

1  There is no evidence to suggest that the officers were not acting in good faith; however, the mistaken
2  arrest may still violate Bennett's Constitutional rights if the mistake was unreasonable.

3  It is not entirely clear exactly when in the events that transpired after making contact with
4  plaintiff the officers obtained the identifying information.  While communicating with dispatch they
5  learned of the existence of the warrant and the identifying information related to the warrant
6  including the name, physical description, date of birth and social security number and determined
7  that this information was substantially consistent with the information that they had obtained from
8  Bennet.  *See* Ex.1; Flores Dec. ¶¶ 4–7; Garcia Dec. ¶¶ 4–5.  Nonetheless, the actions that the officers
9  took were reasonable and, within a reasonable period of time they made the reasonable assessment
10 that the person they had in custody was the person sought in the warrant.  Although Bennett is not an
11 uncommon name when taken together with the first name and an aka middle name that is
12 uncommon, along with the other matching information, a reasonable officer would believe he had
13 probable cause to arrest the subject on the outstanding warrant.  *See, e.g.*, *Hill*, 401 U.S. at 803–04
14 (physical description and location); *Tibbs*, 469 F.3d at 665 (imperfect name match, physical
15 description, and apparent knowledge of warrant); *Rodriguez*, 280 F.3d at 1347-49 (name, imperfect
16 physical description match, and imperfect match on other information); *Johnson*, 689 F.2d at 41
17 (name and address).

18 Thus the court finds that it was objectively reasonable for the police to rely on the matching
19 information they had in order to discount the arrestee's claims of innocence—even though those
20 claims eventually proved true.  Therefore, the officers committed no violation of Bennett's Fourth
21 Amendment rights by keeping him in custody after they confirmed that his name and date of birth
22 matched the warrant.

23 Because the court concludes that the officers had probable cause to arrest Bennett there is no
24 need to reach the qualified immunity or entity liability issues.

25 II.  <u>Unreasonable Force</u>

26 Bennett has presented no evidence to support his allegation that he was subjected to excessive
27 force.  He wholly fails to contest Flores's and Garcia's declarations that no excessive or unreasonable
28

9

1  force was used. In fact, his complaint is bereft of any factual allegations that would support such a
2  claim. Therefore, summary judgment is granted in favor of defendants with respect to plaintiff's first
3  claim for relief insofar as it purports to be based on unreasonable force.

### III.    Remaining Claims

Defendants purport to move for summary judgment on all of plaintiff's claims. However, they present no argument with respect to plaintiff's equal protection claim, state law claims and common law claims. Even so, it is clear from the absence of support for the false arrest and unreasonable force claims and specific allegations of fact in the complaint which would support these additional claims that they cannot go forward. Therefore, summary judgment in favor of defendants must be granted.

### CONCLUSION

The court notes in conclusion that this case was set for trial. At the time of the initial hearing on summary judgment plaintiff had done virtually no discovery. The court continued the motion to give plaintiff an opportunity to propound discovery including the taking of depositions. No depositions were taken by plaintiff. At the request of the court defendants produced the CD-ROM that is Exhibit 1 and which assisted the court. Plaintiff did no further discovery and could add nothing to the further argument at the rescheduled summary judgment hearing. The court gave plaintiff thirty (30) days to dismiss this action without an order of the court. Nothing in response to that offer was forthcoming. Therefore and for the foregoing reasons, defendants' motion for summary judgment is GRANTED and this action is DISMISSED in its entirety.

IT IS SO ORDERED.

Dated: 9/23/2010

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10

## **ENDNOTES**

1. To the extent evidence objected to by defendants is included in this order, the objection is overruled.

2. It is not clear whether Flores acquired Bennett's social security number and date of birth from Bennett prior to comparing them to the warrant, or whether Flores acquired Bennett's social security number and date of birth from some other source first, compared them to the warrant, and subsequently re-confirmed with Bennett personally. *See* Flores Dec. ¶¶ 6–7.

3. The analysis of Bennett's Fourteenth Amendment claims is identical to that of Bennett's Fourth Amendment claims. *Albright v. Oliver*, 510 U.S. 266 (1994).